HAINAULT *v.* VINCENT.

1. Automobiles—Left Turn—Yielding Right-of-Way—Negligence
—Contributory Negligence—Speed.

Evidence, presented in eastbound motorist's action against school
district and driver of its westbound bus, *held*, to have been
ample to permit jury to conclude that bus driver was negligent
in making a sudden turn in front of plaintiff's oncoming auto-
mobile as defendant driver had the statutory duty to yield
the right-of-way to any vehicle approaching from the opposite
direction which is within the intersection or so close thereto
as to constitute an immediate hazard and that plaintiff was pro-
ceeding at a lawful speed, hence, not guilty of contributory
negligence (CLS 1956, §§ 257.647, 257.650).

2. Same—Anticipation of Negligence.

An eastbound motorist, traveling at a lawful rate of speed, is
not required to anticipate the negligent or unlawful act of
defendant driver of westbound school bus with left-turn signal
on in suddenly making a left turn in front of him and not
yielding the right-of-way under the circumstances (CLS 1956,
§§ 257.647, 257.650).

3. Same—Contributory Negligence—Speed—Observation—Burden
of Proof.

The contributory negligence of plaintiff eastbound motorist by
reason of speed or failure to make proper observations prior
to collision with westbound school bus which made a left turn

References for Points in Headnotes

[1, 2] 5A Am Jur, Automobiles and Highway Traffic §§ 296, 297, 387–
389.
Right-of-way at street or highway intersections. 21 ALR 974, 37
ALR 493, 47 ALR 595.
[3] 5A Am Jur, Automobiles and Highway Traffic §§ 910, 1026, 1028–
1030.
[4] 5A Am Jur, Automobiles and Highway Traffic §§ 1013–1017.
[5–7] 39 Am Jur, New Trial §§ 156–176.
[8] 5A Am Jur, Automobiles and Highway Traffic §§ 1091–1098;
53 Am Jur, Trial §§ 824–827.
[9] 53 Am Jur, Trial §§ 542, 567.

immediately in front of him was a question of fact for jury upon which issue the burden of proof was on the defendant (CLS 1956, §§ 257.647, 257.650; Court Rule No 23, § 3a [1945]).

4. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—GREAT WEIGHT OF EVIDENCE.

Jury verdict for plaintiff eastbound motorist who was injured in collision with left-turning westbound school bus *held,* not against the great weight of the evidence on issues of negligence and contributory negligence (CLS 1956, §§ 257.647, 257.650).

5. SAME—NEW TRIAL—CUMULATIVE EVIDENCE.

Motion for new trial in action arising from collision between plaintiff's eastbound automobile and defendants' westbound left-turning school bus *held,* properly denied on ground that evidence would have been cumulative and would not have been likely to change the result, where affidavits, upon which motion was based, were of 2 eyewitnesses who were in an automobile behind the bus as it went up the hill and had less opportunity to see over the crest of the hill than defendant bus driver (CLS 1956, §§ 257.647, 257.650).

6. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.

A motion for a new trial, upon the ground of newly-discovered evidence, is not regarded with favor as it is the policy of the law to require of parties care, diligence, and vigilance in securing and presenting evidence.

7. SAME—NEWLY-DISCOVERED EVIDENCE.

To entitle a party to a new trial on the ground of newly-discovered evidence, it must appear that the evidence, not merely its materiality, must be newly discovered, that the evidence be not cumulative merely, that it be such as to render a different result probable on a retrial of the cause and that the party could not with reasonable diligence have discovered and produced it at the trial.

8. AUTOMOBILES—LEFT-TURNING SCHOOL BUS—INSTRUCTIONS.

Instruction given to jury in action arising out of collision between plaintiff's eastbound automobile and defendants' westbound left-turning school bus *held,* although lengthy, not weighted toward either party and not objected to by either party at the conclusion of the charge although defendants' counsel did so the next day (CLS 1956, § 257.647).

9. SAME—LEFT-TURNING SCHOOL BUS—INSTRUCTIONS—NEGLIGENCE—
   STATUTES.

    Instruction in action arising out of collision between plaintiff's
   eastbound automobile and defendants' westbound left-turning
   school bus, which quoted the left-turn statute and drew jury's
   attention to defendant school bus driver's testimony but was
   immediately followed by direction to jury to make determination of whether or not the school bus driver was negligent *held*,
   not reversible error (CLS 1956, § 257.647).

Appeal from Delta; Rushton (Carroll C.), J. Submitted June 8, 1961. (Docket No. 28, Calendar No. 48,857.) Decided December 28, 1961.

Case by Joseph L. Hainault against John E. Vincent and Bark River-Harris Township School District, Delta County No. 2 for personal injuries sustained in collision of automobile and school bus. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Nicholas P. Chapekis* and *James P. Chapekis,* for plaintiff.

*McGinn & Fitzharris,* for defendants.

EDWARDS, J. Plaintiff's negligence action resulted in a jury verdict for $14,563.90. The award was made for injuries received when his automobile collided with a school bus driven by defendant Vincent and owned by defendant school district. The circuit judge entered the judgment and denied a motion for new trial.

Defendants appeal, claiming that the verdict is against the great weight of the evidence, that the circuit judge should have granted a new trial because of newly-discovered evidence, and that the circuit judge committed various errors of inclusion and omission in his jury charge.

The accident happened on December 12, 1958, at about 4:30 p.m., on US-2 (US-41), between Powers and Wilson, in Delta county. Plaintiff was driving toward Escanaba alone in a passenger automobile. Defendant Vincent was driving west in a 27-foot-long school bus with 3 passengers. Approaching the intersection of US-2 (US-41) and Hansen road, Vincent pulled to his right (the north side) of the highway, and then turned left to turn into Hansen road. The accident occurred in the south lane of US-2 (US-41) at the intersection.

Vincent testified that he looked ahead on US-2 (US-41) before starting his left turn and saw nothing coming. He stated further that he started to make the turn, heard brakes, looked up and saw an automobile coming at a high rate of speed which struck the bus just behind the right front door, turning it over.

Both vehicles were demolished, and both drivers were injured. Plaintiff suffered skull, nose, and facial bone fractures and testified that he had no memory of any events after leaving Powers until he woke up in the hospital.

Plaintiff's theory of the accident is that defendants' bus made a left-hand turn directly in front of his automobile.

Defendants' theory is that Vincent's view of plaintiff's car was limited by the crest of a hill just beyond Hansen road, that he had his turn-signals on, and that plaintiff was traveling at an excessive speed.

Defendant Vincent's version of the accident was supported generally by his 3 teen-age passengers. It was perhaps most graphically set forth in the following testimony given by defendant Vincent on cross-examination:

"*Q.* Do you remember a question asked you at that time? This is the question. 'As you approached the road to make a left turn, did you begin to gradually

drive to the left side of the road or did you make a sharp left turn?' And you answered, 'No, I went up to the driveway and went out to the shoulder, to the right, as I always did, and even with the road and looked to see if there was something coming and shoot across.' Do you remember saying that?

"*A.* Yes.

"*Q.* Is that a true statement?

"*A.* Well, yes.

"*Q.* 'As you approached the intersection you went off the shoulder to the right?' And you answered, yes. Question: 'And you stayed strictly to the right near or on the shoulder?' Answer: 'Near just before I—' Question: 'Were any wheels on the right shoulder of the road?' Answer: 'A little bit, yes.' That's true?

"*A.* Yes.

"*Q.* Question: 'You stayed on the right shoulder until you came even with the intersection of the Hansen road?' And your answer was yes. Question: 'From there you made a left turn directly across the highway?' Answer: 'Yes.'

"*A.* Yes.

"*Q.* Question: 'Did you stop before you turned?' Answer: 'No, I just slacked up.'

"*A.* I slowed up and seen there was no car coming and pulled across."

The accident itself serves to deny the literal meaning of this last assertion. There certainly was a car coming.

The record makes clear that the bus never got across but was struck by plaintiff's automobile while blocking plaintiff's lane of travel.

Further, there is expert testimony which serves to indicate that from the point of defendant Vincent's location as he started to make his turn, he had 600 feet of vision of any automobile following the path which plaintiff's automobile traveled.

CLS 1956, § 257.650 (Stat Ann 1960 Rev § 9.2350), provides:

"The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by this chapter, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way to the vehicle making the left turn."

We believe that the jury had ample evidence from which it could properly have concluded that defendant Vincent was negligent in making a sudden turn in front of plaintiff's oncoming automobile.

The more formidable fact problem pertains to whether the jury's verdict implying a finding of plaintiff's freedom from contributory negligence was against the great weight of the evidence. Here, defendants rely principally upon the testimony of 1 teen-age passenger (plaintiff was going 85 miles per hour—or, on cross-examination, perhaps 60), plus an expert witness' deductions from the 93 feet of plaintiff's skid marks and the force of the crash (assuming different facts, he deduced speeds of 73 miles per hour and 64 miles per hour).

The legal speed limit at this time and place was 65 miles per hour. The weather was good; the road dry. The area was open country and, as far as this record discloses, there was no traffic ahead of plaintiff in his lane of travel. The fact that, as plaintiff topped the hill, there was a school bus approaching in the other lane of travel, with a left-turn signal on, would not require him to assume that the bus would suddenly turn in front of him.

There is evidence from which the jury could have inferred that the defendant Vincent's turn from the north lane of the road to the point of impact (just

beyond the south lane) may have been accomplished in as little as 2 seconds.

Defendant had the statutory duty to "yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard." CLS 1956, § 257.650 (Stat Ann 1960 Rev § 9.2350).

From the conflicting evidence, the jury could have found that plaintiff was proceeding at a lawful speed and that defendant did indeed "shoot across" the road.

Plaintiff was not required to anticipate the negligent or unlawful act of defendant Vincent. *Knoellinger* v. *Hensler,* 331 Mich 197; *Vandervelt* v. *Mather,* 353 Mich 1. The question of whether plaintiff's speed or observations were factors which contributed proximately to the accident was a question of fact for the jury. The burden of proof on that issue was on the defendants. Michigan Court Rule No 23, § 3a (1945).* This record does not support a conclusion that the jury verdict was against the great weight of the evidence.

Defendants' motion for a new trial was founded upon affidavits of 2 eyewitnesses who did not testify at the trial. It appears that no one connected with the case knew how to reach them until after the trial. The affidavits allege that these 2 witnesses were in an automobile behind the bus as it went up this hill. Read at face value, the affidavits give substantial support to defendant Vincent's testimony that plaintiff's car was not in sight when Vincent started to make his turn.

These witnesses were, however, 600 to 700 feet from the intersection and downhill therefrom. They obviously did not have the opportunity to see over

---

* Added April 14, 1958. See *352 Mich* xiv.—REPORTER.

the crest that Vincent had. Neither affidavit sheds any light on the critical issue of plaintiff's speed, except to describe it as going "fast," or "at a good clip."

The circuit judge denied the motion on the ground that the evidence would have been cumulative and would not have been likely to change the result. In *Canfield* v. *City of Jackson,* 112 Mich 120, this Court said (p 123):

" 'A motion for a new trial, upon the ground of newly-discovered evidence, is not regarded with favor. The policy of the law is to require of parties care, diligence, and vigilance in securing and presenting evidence.' Elliott, Appellate Procedure § 857. To entitle one to a new trial upon this ground it should be shown: *First,* that the evidence, and not merely its materiality, be newly discovered; *second,* that the evidence be not cumulative merely; *third,* that it be such as to render a different result probable on a retrial of the cause; *fourth,* that the party could not with reasonable diligence have discovered and produced it at the trial."

See, also, *Reardon* v. *Buck,* 335 Mich 318.

We agree with the trial judge that the proposed new evidence is largely cumulative, and not "such as to render a different result probable."

No detailed analysis of the 10 issues pertaining to the charge seems to us to be required. The charge was lengthy. It does not appear to be weighted toward either party. At the conclusion of the charge neither counsel recorded objections, although defendants' counsel did so the following day.

Defendants' most important contention in relation to the charge is that the trial judge committed error by quoting the left-turn statute (CLS 1956, § 257.647 [Stat Ann 1960 Rev § 9.2347]) and calling defendant Vincent's testimony as to his turn (and why he made

it that way) to the jury's attention. It should be noted that he then proceeded to say:

"I am going to leave it to you to determine whether or not Mr. Vincent was negligent in making this turn as he did."

Taken as a whole, we believe the charge contains no reversible error.

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, BLACK, KAVANAGH, and SOURIS, JJ., concurred.

OTIS M. SMITH, J., took no part in the decision of this case.