GILLISPIE v BOARD OF TENANT AFFAIRS OF THE DETROIT
HOUSING COMMISSION

Docket No. 56306. Submitted April 19, 1982, at Detroit.—Decided
January 4, 1983. Leave to appeal applied for.

Janice Gillispie was fired from her employment for the Board of
Tenant Affairs of the City of Detroit Housing Commission. She
filed suit in Wayne Circuit Court against the Board of Tenant
Affairs and the City of Detroit seeking damages as a result of
her dismissal and alleging that she was dismissed solely be-
cause she is white. The court, Thomas A. Brennan, J., following
a jury verdict for the plaintiff, granted the defendants a new
trial because he believed that the verdict was excessive. Follow-
ing a second trial in which the jury's verdict was even larger,
the court, Susan A. Borman, J., denied the defendants' motion
for a new trial on the basis of newly discovered evidence and
fraud but reduced the amount of damages to the amount of the
verdict in the first trial by an order of *remittitur.* The defen-
dants appealed, alleging that the trial court erred in not
granting their motion for a new trial. The plaintiff cross-ap-
pealed, alleging that the trial court erred in ordering *remitti-
tur. Held:*

1. The trial court did not err in denying the defendants'
motion for a new trial. The defendants did not satisfy their
burden of establishing that they could not have discovered the
alleged newly discovered evidence through the exercise of
reasonable diligence. The defendants did not conduct any dis-
covery throughout the course of the litigation.

2. The trial court did not abuse its discretion in ordering the
*remittitur.*

Affirmed.

1. MOTIONS AND ORDERS — NEW TRIAL.
   A party moving for a new trial on the basis of newly discovered

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur 2d, New Trial §§ 164, 166.
[2] 58 Am Jur 2d, New Trial §§ 158, 175.
[3] 5 Am Jur 2d, Appeal and Error § 939.
[3, 4] 22 Am Jur 2d, Damages § 366.

evidence must establish that he could not with reasonable diligence have discovered the evidence and produced it at the trial before the granting of a new trial is warranted (GCR 1963, 527.1[6]).

2. Motions and Orders — New Trial — Perjury.

A mere allegation that the opposing party committed perjury and that the complaining party could establish such perjury upon a retrial should not justify the granting of a new trial to the complaining party; the fraud for which a motion for a new trial should be granted is the misleading of the defeated party by some artifice or deception of his opponent.

3. Appeal — *Remittitur.*

A trial judge's order of *remittitur* should not be reversed on appeal unless the trial judge abused his discretion.

4. Damages — *Remittitur.*

A jury may award damages in an amount greater than that sought; however, the amount sought is one factor to be considered in determining whether an award is excessive.

*Lampert, Fried & Levitt, P.C.* (by *David M. Fried* and *Gary E. Levitt),* for plaintiff.

*Sylvester Delaney,* Deputy Corporation Counsel, *William Daniel,* Assistant Corporation Counsel, and *Jeannette A. Paskin,* Special Assistant Corporation Counsel, for defendant.

Before: Bronson, P.J., and D. F. Walsh and C. W. Simon,* JJ.

Per Curiam. Plaintiff was employed by the Board of Tenant Affairs of the City of Detroit in November, 1970, as a secretary-bookkeeper. In October, 1973, plaintiff filed suit seeking damages sustained as a result of her discharge from her employment because she is white. The suit was initially tried before a jury in July, 1977, which

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

returned a verdict in favor of plaintiff in the amount of $500,000. The defendants were granted a new trial on the ground that the verdict was excessive.

A second trial in the cause was commenced in August, 1980. Liability was admitted by defendants. Only the issue of damages was submitted to the jury. Plaintiff sought damages for lost wages and compensation for the mental anguish, embarrassment, humiliation, and loss of social and religious enjoyment which she allegedly suffered as a result of her wrongful discharge. Plaintiff's counsel conceded that her lost wages did not exceed $5,-000.

Plaintiff's expert, a clinical psychologist, testified extensively regarding the causal connection between subsequent events and plaintiff's emotional and psychological injuries due to her firing. While plaintiff had been a trusting and helping person before her firing, she is now "emotionally paralyzed" and "phobic of trust relationships" as a result of her firing. After her discharge plaintiff was divorced, ceased her church activities, and terminated her participation in work with a community theater group.

Defendant presented no evidence and did not call any witnesses, except for plaintiff, to question her "only about economic" losses.

The jury awarded plaintiff $750,000. The trial judge denied defendants' subsequent motion for a new trial on the grounds of newly discovered evidence and fraud but, finding the jury's award to have been excessive, entered judgment in the amount of $500,000, pursuant to an order of *remittitur.*

Defendants have appealed, claiming their motion for a new trial was erroneously denied; plain-

tiff has filed a cross-appeal, asserting the *remittitur* was improper.

The motion for a new trial was based on the proffered testimony of Anthony Ambrozy, who had contacted defendants after the second trial. Ambrozy had been plaintiff's "companion" and partner in the operation of a dog-grooming business from 1975 until March of 1979. During their relationship they went to numerous Lions football games and the race track. They took out-of-state vacations and attended various social functions. On one occasion, plaintiff was to have belly danced at a party but was unable to, having broken her toe the night before. Plaintiff and Ambrozy also had a sexual relationship.

While we agree with defendants' claim that the jury's assessment of the severity and permanency of plaintiff's emotional and psychological damages may have been considerably different had it been informed of the facts revealed by Mr. Ambrozy, we also agree that the trial court properly denied defendants' motion for a new trial. Before newly discovered evidence warrants a new trial, the movant must show that he could not with reasonable diligence have discovered the evidence and produced it at trial. GCR 1963, 527.1(6); *Hainault v Vincent,* 365 Mich 370, 377; 112 NW2d 569 (1961); *Moldovan v Allis Chalmers Mfg Co,* 83 Mich App 373, 384-385; 268 NW2d 656 (1978).

Defendants have not satisfied their burden of establishing that the evidence could not have been discovered through the exercise of reasonable diligence. During the almost seven years that this litigation had been pending, and through the course of two jury trials, defendants did not conduct *any* discovery. No depositions were taken of plaintiff or plaintiff's witnesses, nor were any in-

terrogatories submitted to plaintiff. Defendants make no allegation of having interviewed any prospective witness or having conducted any investigation into the activities of plaintiff after she was unlawfully fired. Defendants, having failed to even attempt to elicit such information prior to trial, cannot be heard now to assert that plaintiff would not have truthfully answered questions properly put to her.

We find that plaintiff and those witnesses testifying on her behalf did not conceal any facts regarding her relationship with Ambrozy which would have been responsive to a question put to them either on direct or cross-examination. For this reason, we also find no abuse of discretion in the denial of a new trial on grounds of fraud or misrepresentation, GCR 1963, 527.1(9); GCR 1963, 528.3(3).

The record completely supports the trial court's observation that plaintiff "was never asked whether she attended a restaurant, theater parties, sporting events, or whether she had taken trips or dated". Plaintiff never testified that she did not engage in such activities subsequent to her firing.

Even if it were possible to discover in the some 900-plus pages of transcript one statement which could objectively be characterized as a lie or misrepresentation in light of the testimony at the hearing, this would hardly warrant the relief sought by defendant. Long ago in *Gray v Barton,* 62 Mich 186, 196, 197; 28 NW 813 (1886), Justice MORSE, speaking for a unanimous Court, wrote:

"But it does not seem to me that the mere allegation that the defendant committed perjury upon the trial, and the belief of the complainant that he can establish such perjury upon a retrial, is such a fraud as will

authorize a court of equity to interfere, after the judgment against him in a court of law has been affirmed by the highest tribunal. The establishment of such a right in the defeated party would open the way for another contest in equity in almost, if not every, suit decided at law. There is scarcely a controversy in the courts in which there is not a conflict of testimony, and there are quite often charges of false swearing, and seldom is a case tried and decided in which new evidence cannot be obtained after people suppose it to be ended.

\* \* \*

"The fraud against which courts of equity generally relieve is the misleading of the defeated party by some artifice or deception of his opponent."

When a finding is made by the trial court that the only error is the excessiveness of the verdict, the court may deny a motion for new trial on the condition that the nonmoving party consents to the entry of judgment of an amount found by the judge to be the highest amount which the evidence will support. GCR 1963, 527.6. In reviewing the decision of a trial judge to either grant or deny *remittitur* or grant a new trial, we must determine whether there has been an abuse of discretion. *Stevens v Edward C Levy Co,* 376 Mich 1, 6; 135 NW2d 414 (1965); *Pippen v Denison Division of Abex Corp,* 66 Mich App 664, 675; 239 NW2d 704 (1976), *lv den* 399 Mich 823 (1977). A reviewing court will only substitute its judgment for that of the trier of fact where a verdict has been secured by improper methods, prejudice, or sympathy, or where it is so excessive as to "shock the judicial conscience". *Watrous v Conor,* 266 Mich 397, 401-402; 254 NW 143 (1934); *Stevens, supra.*

Plaintiff's counsel has conceded that plaintiff's lost earnings were not in excess of $5,000. Thus, at least $745,000 of the jury's verdict must have been

for various aspects of pain and suffering. While the question is close, upon careful review of the record, we find that the award of $750,000 shocks the judicial conscience and that *remittitur* to $500,000 was not an abuse of discretion.

Plaintiff's complaint sought damages of $200,-000. As the trial court noted, this Court has indicated that, while a jury may award greater damages than those sought, that is one factor to consider in determining whether an award is excessive. *Tomei v Bloom Associates, Inc,* 75 Mich App 661, 668-669; 255 NW2d 727 (1977).

While plaintiff produced ample evidence at trial as to the existence and possible permanency of her psychological and emotional injuries and the effect the same had had on her personal and social life, we feel compelled to agree with the trial court that the jury's award of $750,000 for the "imponderables" is so great as to "shock the judicial conscience". We simply cannot conceive of plaintiff's nonphysical and subjective damages amounting to $750,000. While there are no allegations by defendants that the verdict was secured by improper methods, prejudice or sympathy, it is likely that the jury was swayed in its evaluation of plaintiff's damages by the outrageousness of the conduct of defendant city's agent, Draper, toward plaintiff.

Affirmed.